# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

EDDIE HUMES, SR.                                                PLAINTIFF

V.                              No. 4:20-CV-479-LPR-JTR

WHITE COUNTY, ARKANSAS,
A Public Body Corporate and Politic, et al.                    DEFENDANTS

## PARTIAL RECOMMENDED DISPOSITION

The following Partial Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.      Introduction

On May 6, 2020, Plaintiff Eddie Humes Sr. ("Humes"), through his attorney, Austin Porter, Jr., initiated this § 1983 action. *Doc. 1.* Humes's Complaint alleges that, while he was incarcerated as a pretrial detainee in the White County Detention Center ("WCDC") from October 20 through 27, 2017, Defendants violated his constitutional rights by denying and delaying the medical care he needed for a staph

infection of his right hand and arm.[1] *Doc. 1*. He also alleges that Defendant Sheriff Phillip Miller ("Sheriff Miller") failed to properly train WCDC staff on how to respond to the medical needs of its prisoners, and that White County had a custom, policy, and practice of failing or refusing to provide WCDC inmates adequate medical care, due to financial concerns. *Id. at 7–9*. His Complaint asserts claims against: Jail Administrator Clayton Edwards ("Edwards"), Lieutenant Misty Jones ("Jones"), and Deputy Stephanie Gray ("Gray") in their individual and official capacities; Nurse Hall in her individual capacity only; Sherriff Miller in his official capacity only; and White County, Arkansas.

During discovery, it became clear that Humes had served the Complaint on Nurse Shawna Chassity Hall. She was *not* the "Nurse Hall" identified in the Complaint as having provided Humes with inadequate medical care. On January 11, 2021, the Court entered an Order (*Doc. 29*) granting Nurse Shawna Chassity Hall's Motion for Summary Judgment based on her uncontroverted Affidavit stating that she had never worked at the WCDC and "did not provide care for or have any involvement with the inmate, Eddie Humes, in October 2017" (*Doc. 25-1*). Since

---

[1] Humes believed the cause of the infection was a bite from a brown recluse spider on October 20, 2020, shortly after he entered the WCDC. On October 21, 2020, a nurse in the WCDC looked at Humes's hand and told him she believed he had a staph infection. On October 25, Humes was transported to the White County Medical Center where an emergency room physician diagnosed him with cellulitis, "an infection of the skin and the tissue beneath it," commonly caused by staphylococcus ("staph"). *Doc. 43-9 at 2*.

that time, the identity of the "Nurse Hall" named in the Complaint has remained a mystery, and she has never been served.

On September 1, 2022, the remaining Defendants, Sheriff Miller, Edwards, Jones, Gray, and White County (referred to collectively as "the Defendants") filed the pending Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts. *Doc. 43; Doc. 44; Doc. 45.* Humes filed a Response, an Amended Response to Defendants' Statement of Undisputed Facts, and an Amended Brief in Support of the Response. *Doc. 47; Doc. 50; Doc. 51.* Defendants filed a Reply. *Doc. 53.*

For the following reasons, Defendants' Motion for Summary Judgment (*Doc. 43*) should be GRANTED, in part, and DENIED, in part. Only Humes's individual capacity deliberate indifference claims against Jones and Gray, for inadequate and delayed medical care, should proceed to trial. Humes's individual capacity claim against Edwards and all of his official capacity claims against all Defendants should be dismissed, with prejudice.

## II.    Background

On or about October 19, 2017, Humes was arrested on felony drug charges and booked into the WCDC as a pretrial detainee. On October 20, 2017, he alleges he was bitten on his right hand by a brown recluse spider. *Doc. 1, ¶ 16.* Over the next seven days, he claims Defendants were deliberately indifferent to his serious

3

medical need for proper treatment of an infection that developed in his right hand and arm.[2] According to Humes, Defendants' conduct violated his constitutional rights under the Fifth and Fourteenth Amendments.

Before reaching the merits of Defendants' Motion for Summary Judgment, the Court will state the relevant facts giving rise to Humes's claims.[3]

---

[2] There is no objective medical evidence to support Humes's persistent belief that he was bitten by a brown recluse spider. *All* of the medical evidence supports Humes developing a staph infection on October 20, 2017, which remained untreated until he was taken to the White County Medical Center on October 25, 2017. For purposes of analyzing Humes's inadequate and delayed medical care claims, it makes no difference whether Humes's medical problems began from a spider bite or a staph infection.

[3] Defendants filed a Statement of Undisputed Facts in support of their Motion for Summary Judgment. *Doc. 45*. It was properly supported by sworn Declarations from Defendants Edwards, Jones, and Gray. *Docs. 43-1, 43-4 & 43-6*. Defendants also attached Humes's deposition. *Doc. 43-8*. These Declarations established all of the material facts relied on by Defendants in their Statement of Undisputed Facts. *See* Fed. R. Civ. P. 56(c).

Humes initially filed a "Response Regarding Defendants' Statement of Undisputed Facts" (*Doc. 48*), which he then replaced with a pleading captioned "Plaintiff's Amended and Substituted Response to Defendants' Statement of Undisputed Facts." *Doc. 50*. In contrast to Defendants' Statement of Undisputed Facts, very few of Humes's responses to Defendants' material facts (*Doc. 50*) contain *any* specific and properly supported facts directly "disputing" those presented by Defendants. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B).

However, there is one important genuine issue of material fact that Humes has properly supported by his deposition and eyewitness testimony. In her Affidavit, Defendant Jones states that she "did not have any encounter with [Humes] personally and never was shown his hand or arm he claimed was bitten by a spider." *Doc. 43-4 at 2*. In her Affidavit, Defendant Gray states that she "did not encounter [Humes] while he was incarcerated to the best of [her] recollection, and [] certainly did not view any injuries he may or may not have had." *Doc. 43-6 at 2*. Defendants also point to the WCDC's Offender Log Report, which seems to suggest, to the extent that they are reliable, that Jones and Gray did not visit Humes in his cell. *Doc. 50-1 at 11–17; Doc. 52-1*.

In contrast, Humes testified in his deposition that, between October 22 and 24, both Jones and Gray went to his cell several times and both of them refused his repeated requests to see a medical provider for the serious and spreading infection in his right arm and hand, which was becoming more and more painful. *Doc. 43-8 at 25–26, 40–41, 43–44, 45*. Several times throughout the record, Jones uses "he/his" pronouns when referring to Jones, who is a female. *See e.g., Doc. 1 at 2, ¶ 7; Doc. 43-8 at 43–45*. He admits in his deposition that he has a hard time remembering the genders of the people he interacted with around the time of his October 19, 2017 arrest and subsequent incarceration. *Doc. 43-8 at 14, 20*. Thus, to support his allegations against Jones and

## Relevant Facts

1.      Bald Knob Police arrested Humes, around October 19, 2017, on felony drug charges. He was taken to the WCDC and jailed as a pretrial detainee. *Doc. 50, ¶¶ 1–2.*

2.      Defendants Jones and Gray worked in the WCDC at the time Humes received the alleged spider bite on October 20, 2017. *Doc. 43-4 at 1, ¶ 2; Doc. 43-6 at 1, ¶ 2.*

3.      At all times relevant to Humes's claims, Edwards held the rank of Major in the White County Sheriff's Department—*not Jail Administrator*, as alleged by Humes. In his position as Major, Edwards did *not* work in the WCDC and, thus, was not working at the WCDC during Humes's incarceration in October 2017. *Doc. 43-1 at 1, ¶ 2.* By the time Humes initiated this action, on May 6, 2020, Edwards had been promoted to Jail Administrator. *Doc. 50, ¶¶ 5, 41–42.*

---

Gray, Humes also submitted the Affidavit of his WCDC pod-mate, Austin Coughlin ("Coughlin"). *Doc. 51-1.* Coughlin stated that he saw both Jones and Gray visit Humes in his cell and Humes showed both of them his swollen hand. *Id.* at 1–2. According to Coughlin, Gray "basically ignored and/or denied [Humes's] requests for medical attention" and Jones said that "there was nothing that she could do." *Id.* Humes has also pointed out inaccuracies in the Offender Log Report sufficient to create a jury question regarding the reliability of those documents. *See Doc. 50 at 16–17. Only a jury can resolve the credibility issues surrounding these genuine issues of disputed facts that bear directly on the merits of Humes's claims that Jones and Gray provided him with delayed and inadequate medical care.*

Accordingly, in my recitation of the Relevant Facts, I have construed these narrow but extremely important disputed facts in a light most favorable to Humes, as required by Rule 56. However, all of the other material, relevant, and properly supported facts in Defendants' Statement of Undisputed Facts, which Humes has *not properly controverted* with other admissible evidence, should be deemed admitted pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure.

4.     Major Edwards had no contact with Humes about either the October 20, 2017 spider bite or the subsequently diagnosed staph infection in his right hand. Major Edwards was never informed by anyone that Humes needed or requested medical attention for a spider bite, staph infection, or any other medical problem. *Doc. 50, ¶¶ 43–44.*

5.     On October 19, 2017, the WCDC had a written grievance procedure which allowed prisoners to file grievances using an electronic kiosk system. *Doc. 50, ¶ 51.*

6.     The WCDC Policies and Procedures Manual stated that a third-party medical provider would conduct sick call and provide medical services to prisoners. *Doc. 50, ¶ 53.* The WCDC Policies and Procedure Manual further stated that medical care would be provided to inmates regardless of their financial status. *Doc. 50, ¶ 54.*

7.     During the relevant time period, October 20 through October 25, 2017, Turn Key was the third-party contract medical provider for WCDC. *Doc. 50, ¶¶ 3–4.* WCDC prisoners were instructed to use the electronic kiosk system to submit sick call requests. *Doc. 43-4 at 1, ¶ 5.*

8.     Turn Key medical employees became aware of a prisoner's need for medical services when the kiosk was used to file a sick call request. *Doc. 50, ¶¶ 55–56.*

9.     Beginning on or about October 20, 2017, Humes used the emergency call button in his cell, *not* the kiosk, to request medical attention for his right hand. *Doc. 43-8 at 26–27*. Humes testified in his deposition that he would hit the emergency call button "at least 12 to 15 times a day." According to Humes, his requests were sometimes ignored and sometimes resulted in jailers, like Gray and Jones, visiting his cell. *Doc. 50, ¶¶ 6 & 17; Doc. 50-1 at ¶¶ 6 & 7*.

10.     On October 21, 2017, Humes was able to see Nurse Hall[4] during "med call." *Doc. 43-8 at 25*. Humes "barely got a chance to speak with her," but he was able to show her his "spider bite." *Id.* After evaluating his hand, Nurse Hall tentatively diagnosed a possible staph infection. Humes disagreed and stated: "No, it is not staph, I was bitten by a spider." *Doc. 50, ¶ 15*. Nurse Hall told Humes "she [would] check it the next day." *Doc. 50, ¶ 17*. For unknown reasons, Humes was not taken to sick call on October 22, 2017.

11.     The parties hotly dispute whether Humes saw and complained to Defendants Jones or Gray, on October 22, 23, or 24, 2017, about his need for immediate medical treatment for his right hand and arm. *Doc. 50, ¶¶ 12–13, 17–18, 22–23, 31, 35–40*. Gray states in her Declaration that, between October 20 and October 25, she had no contact with Humes about any injury or medical problem

---

[4] As indicated earlier, the "Nurse Hall" who saw Humes on October 21, 2017 has never been served and is *not* a party to this action.

with his hand. *Doc. 43-6.* Jones states in her Declaration that she only had one contact with Humes, on October 25, after he used the kiosk to file a grievance complaining about not receiving medical care for his staph infection, which had remained untreated since it was tentatively diagnosed on October 21. Rather than addressing the merits of Humes's request for medical care, which he badly needed, Jones's written response to his grievance stated he would need to submit a sick call request if he wanted medical care.[5] *Doc. 43-4.*

12.     In his deposition, Humes claims he saw Jones and Gray at his cell on October 22, 23, and 24, and repeatedly showed them his swollen hand and arm, and asked them to let him see a medical provider. Humes testified they took no action to allow him to see a medical provider. *Doc. 43-8 at 25–26, 40–41, 43–44, 45.* In the Affidavit of Humes's pod-mate, Coughlin, he also states that, during that time, Jones and Gray both visited Humes in his cell, and he showed them his swollen hand and requested medical attention. *Doc. 51-1 at 1–2.*

13.     At the summary judgment stage, the Court must view these genuine issues of disputed facts in a light most favorable to Humes. Furthermore, the Court

---

[5] Shortly after Humes submitted this grievance and possibly before Jones had provided her 8:24 a.m. electronic response, Humes was transported from the WCDC to the White County Medical Center's emergency room for medical treatment. *Doc. 50-1* (White County Medical Records indicating Humes's vitals were initial taken at 8:33 a.m.); *Doc. 43-8 at 43*. Nothing in the record identifies *who* made this decision.

is *not* permitted to resolve any of those disputed facts in deciding Defendants' Motion for Summary Judgment.

14.     As early as October 20, 2017, Humes used the kiosk system to request *mental health care*. *Doc. 43-3 at 1–2.* On October 21 through 23, he did not use the kiosk system to make a sick call request to obtain medical care for his right hand. *Doc. 50, ¶ 25.* Humes testified that he could not type on the kiosk because of his swollen hand. *Doc. 43-8 at 62.* But, with the help of a fellow inmate, Humes testified he was able to submit several requests on the kiosk on October 22 and 23. Those requests were *unrelated* to his alleged need for medical care, and involved matters ranging from his need for indigent supplies, to a speedy trial, an expediated court date, and a haircut. *Doc. 43-3 at 3, 5–7.* These facts raise a host of credibility issues surrounding *why* Humes did *not* use the kiosk, on October 22 and October 23, to submit a sick call request for the staph infection on his hand and arm. Nevertheless, Humes's deposition testimony and Coughlin's sworn Affidavit directly support Humes's claims that he verbally requested Jones and Gray to allow him to see a medical provider, on October 22, 23, and 24, and they ignored his request.

15.     On October 24, 2017, Humes, again with the help of a fellow inmate, used the kiosk to submit his *first sick call request* seeking medical care for the staph infection in his right hand and arm. *Doc. 50, ¶¶ 11, 19.* In its entirety, this sick call request stated the following:

> i have staff on my hand my hand is really big and hurts everybody in
> the pod is wanting me out cause scared to get staff please help asap it
> hurts bad

*Doc. 43-3 at 8* (spelling and punctuation unaltered from original).

16.    *Nurse Hall* responded that she would put Humes on the list for sick call the next day, October 25, 2017. *Doc. 50, ¶¶ 20–21, 26.* This response by "Nurse Hall" is evidence that she was in fact the Turn Key employee who briefly evaluated Humes's hand on October 21, and unquestionably scheduled him for sick call on October 25.

17.    On October 25, 2017, at 7:27 a.m., Humes used the kiosk to submit a grievance complaining about not receiving any medical care for his staph infection. *Doc. 50, ¶ 19.* In this grievance, Humes stated the following:

> i got spider bit 4 days ago my hand and arm is swolen badly it hurts so bad
> ***your staff night and day ignored my medical calls day and night*** and the
> nurse did to i want to speak to the captain or luitanant hawk asap my hand
> might have to be amputated i hospital attention asap i will law suit if anything
> happens to my arm thanks
> att…….luitanant hawk or captain respond emmeidiantely

*Doc. 43-3 at 10* (emphasis added; original otherwise unaltered).

18.    Around 8:30 a.m., about the same time that Defendant Jones responded to Hume's grievance by telling him he would "need to fill out a sick call to see

medical," Humes was transported to the emergency room at the White County Medical Center. *Doc. 43-3 at 10; Doc. 50 at 14, ¶ 28.*[6]

19.     X-rays were taken of Humes's arm and hand. He was diagnosed with cellulitis, a type of staph infection, and received IV antibiotics, prescriptions for Bactrim, Keflex, two strong antibiotics, and Naprosyn, an anti-inflammatory. He was then discharged back to the WCDC with instructions to seek ER or primary care medical treatment if his condition worsened. *Doc. 43-9 at 2–4; Doc. 50 at 20, ¶¶ 46–47; Doc. 50-1 at 5–7.*

20.     On October 26, 2017, after Humes began to run a "really high fever in jail," he was transported back to the White County Medical Center. *Doc. 43-8 at 30.*[7] The White County Medical Center performed a CT and diagnosed Humes with an abscess to his right hand. *Doc. 50-1 at 8, 10.*

21.     Humes testified that, on October 27, 2017, he received emergency surgery on his right hand.[8] *Doc. 43-8 at 30–31.* On that same day, the WCDC released Humes from its custody "on his own recognizance" per instructions from

---

[6] If WCDC jailers made the decision to transport Humes to the emergency room, it would suggest even a lay person could recognize his need for emergency medical care.

[7] It is disputed whether Humes was seen by a WCDC medical provider on October 26, and it is unclear who ordered that he be transported to the emergency room that morning. The only evidence in the record regarding this fact is the White County Medical Center record that states that Humes was "sent py [sic] jail doctor for more mediations [sic]." *Doc. 50-1 at 9.*

[8] The parties agree that Humes had surgery on his hand, but neither party has produced medical records to establish the date or nature of the surgery.

the prosecuting attorney and judge in Humes pending criminal case. *Doc. 50, ¶ 48; Doc. 51-1 at 13.*

22.    Humes remained in the hospital from October 26 through his release sometime on October 31, 2017. *Doc. 43-8 at 69–70.* According to Humes, he returned to his home, where he required continued wound care and rehabilitation for his arm. *Doc. 43-8 at 31.*

23.    In ¶ 16 of their Statement of Undisputed Fact, Defendants state that "[t]hrough discovery, [Humes] has put forth no evidence at all regarding the training of the individual Defendants or any other Sheriff's Office employee." *Doc. 45, at ¶ 16.* In response, Hume's attorney states only: "Deny." *Doc. 50, ¶ 50.* Based on this clear violation of Rule 56(e), the facts stated by Defendants in ¶ 16 should be deemed undisputed, pursuant to Rule 56(e)(2).

24.    In ¶ 20 of their Statement of Undisputed Fact, Defendants state that: "Through discovery, [Humes] has put forth no evidence of any alleged prior unconstitutional medical practices by these Defendants or any jail staff." *Doc. 45, at ¶ 20.* In response, Humes's attorney states only: "Deny." *Doc. 50, ¶ 59.* Based on this clear violation of Rule 56(e), the facts stated by Defendants in ¶ 20 should be deemed undisputed, pursuant to Rule 56(e)(2).

### III.    Discussion[9]

In their summary judgment papers, Defendants argue that all of Humes's claims must be dismissed because: (A) Humes failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (B) Edwards was not involved in the alleged deprivation of Humes's constitutional rights; (C) Humes was not denied adequate medical care by Jones or Gray because neither of those Defendants was subjectively aware of Humes's alleged serious medical need; (D) Jones and Gray are entitled to qualified immunity; and (E) Humes has produced no evidence in support of any official capacity claim.

### A.    Humes Was Not Required to Exhaust His Administrative Remedies at WCDC.

Defendants argue that "[Humes's] claims should be dismissed *in toto*" because he failed to exhaust his administrative remedies under the PLRA. *Doc. 52 at 1–2; Doc. 44 at 3–5*. Defendants' argument is misplaced.

The PLRA states that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a *prisoner*

---

[9]Defendants moved for summary judgment on all of Humes's claims. *Doc. 43*. Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

*confined* in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a) (emphasis added). Because "prisoner" is defined under the PLRA as "any person incarcerated or detained….," the "exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration." *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (citing 42 U.S.C. 1997e(h); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998)).

Humes initiated this suit on May 6, 2020—more than two-and-a-half years after being released from WCDC on October 27, 2017. Accordingly, the PLRA's exhaustion requirement does not apply to this § 1983 action.[10]

## B. Humes's Individual Capacity Claim Against Defendant Major Edwards

In his Complaint, Humes erroneously alleges that, as *Jail Administrator*, Defendant Edwards denied him medical treatment to avoid incurring medical expenses. *Doc. 1 at 8.* Defendants argue that "Edwards was improvidently sued," and the claims against him should be dismissed because he was not the Jail Administrator at the time of Humes's incarceration and was not personally involved

---

[10] For the same reason, the PLRA's "limitation on attorneys' fees" and "physical proof requirement," which Defendants allege as affirmative defenses in their Answer (*Doc. 7 at 3*) do not apply to this action. *See* 42 U.S.C. § 1997e(d)–(e) (PLRA's attorney fees and physical injury requirement which are also limited to actions brought by "any person incarcerated or detained…").

in the alleged deprivation of Humes's constitutional rights. *Doc. 52 at 2; Doc. 44 at 5.*

Humes concedes that, in October of 2017, Edwards was *not* the WCDC Jail Administrator. *Doc. 50, ¶¶ 5, 41.*[11] Thus, the undisputed facts establish that Edwards had no personal contact with Humes in October 2017 and knew nothing about Humes's staph infection or any of the requests he made for medical care. *Doc. 50, ¶¶ 43–44.*

Accordingly, because Humes has failed to come forward with any facts to support a delayed or inadequate medical care against Defendant Edwards, in his individual capacity, that claim should be dismissed, with prejudice.

## C.   Humes's Individual Capacity Claims Against Defendants Jones and Gray

Humes alleges that, between October 22 and October 24, 2017, Defendants Jones and Gray repeatedly visited his cell and denied his requests for medical care for the staph infection which caused his right hand and arm to become red and increasingly swollen. He testified in his deposition that he believes they were deliberately indifferent to his serious medical needs, and that their three-day delay in allowing him to receive medical care caused his staph infection to worsen and

---

[11] According to Edwards's Declaration, in October of 2017, he was a major in the White County Sheriff's Department and did *not* work inside the WCDC. *Doc. 43-1 at 1, ¶ 2.*

lead to a host of complications that required him to be hospitalized for at least five days.[12]

"Prison officials violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to a pretrial detainee's objectively serious medical needs." *Ivey v. Audrain County, Mo.*, 968 F.3d 845, 848 (8th Cir. 2020) (citing *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)). "To establish a constitutional violation, a [pretrial] detainee must demonstrate an objectively serious medical need that the defendant[s] knew about and deliberately disregarded." *Morris*, 954 F.3d at 1058. "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (references omitted).

As previously explained, there are hotly disputed genuine issues of material fact surrounding whether, on October 22, 23, and 24, Humes repeatedly: (1) told Defendants Jones or Gray about the staph infection that was causing his right hand and arm to swell and cause him increasing pain; and (2) requested them to take him

---

[12] Humes testified that, during this time period, "my arm just kept getting bigger and bigger...more swollen and more hurting" (*Doc. 43-8 at 26*) and "if [Jones and Gray] would have gotten me help in time, I would have not had to have surgery, probably" (*Id. at 39*).

16

to a medical provider in the WCDC.[13] *Compare Doc. 50, ¶¶12–13, 17–18, 22–23, 31, 35–40, with Doc. 43-4, ¶¶ 6, 7; Doc. 43-6, ¶ 6.* This leaves both sides with lots of explaining to do to a jury, which must decide who to believe.

For example, *why* did Humes decide *not* to use the kiosk to make a sick call request on October 22 and 23, and why did he elect to use the emergency call button in his cell to summon Jones and Gray and verbally request them to allow him to see a medical provider? Why did he decide to wait until the afternoon of October 24 to submit his first sick call request using the kiosk, only to have Nurse Hall *almost immediately respond* that she had placed his name on the list for sick call *the next day*, October 25, 2017. *Doc. 50, ¶¶ 20–21, 26.*

Similarly, Gray, one of the jailers who regularly made rounds, must explain why she never walked by Humes's cell during the relevant four-day period, or heard him complain about his rapidly escalating staph infection, which lead to his hospitalization on October 25.

Jones, who was a lieutenant, must explain how it was possible that none of her jail subordinates reported to her that Humes was regularly using the emergency button to request medical care. Over the four days in question, why did she not go

---

[13] It is not this Court's function to make credibility determinations at the summary judgment stage. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations.").

to his cell for herself to see what he was complaining about. Jones must also explain why, in Humes's October 24 grievance, he explicitly complained about being *refused medical care* for his staph infection, something that directly supports his claim that jail personnel did go to his cell on October 22, 23, and 24, but refused his request to see a medical provider for his staph infection. Finally, Jones must explain why she responded to his October 25 grievance by stating that he needed to file a sick call request. Jones's decision to elevate form over substance, in the face of a serious medical emergency that led to Humes being taken to the hospital within minutes after her unhelpful response, will require considerable explaining.[14]

On October 25, 2017, Humes was taken to the emergency room at the White County Medical Center where he was diagnosed with a staph infection in his right hand and arm. *Doc. 43-9 at 2*. The medical records note that Humes's right hand had redness and swelling that had radiated to "midway of right forearm," and signs of infection. *Doc. 50-1 at 7*. After receiving IV antibiotics, and a prescription for two

---

[14] Defendants argues that Jones "followed policy because she [] did not view the alleged spider bite such that she could determine Plaintiff might have been in an emergency situation." *Doc. 44 at 9*. In making this argument, Defendants seem to believe that Jones was allowed to *ignore* Humes's statement in his grievance that his hand and arm were swollen so badly that he was afraid it would need to be amputated and that he "need[ed] hospital attention asap." *Doc. 43-3 at 10*. Fortunately for Humes, he was may already have been on the way to the hospital when Jones decided to ignore his written plea for medical attention.

strong oral antibiotics, he was discharged from the hospital and returned to the WCDC later on October 25.[15]

The next day, October 26, he was again taken to the emergency room because his condition had worsened, and he was running a high fever. He was admitted to the hospital from the emergency room, and diagnosed with an abscess of the right hand, which later required surgery. He remained hospitalized until October 31, 2017.

Viewing the disputed material facts in a light most favorable to Humes, Defendants Jones and Gray would have seen Humes's red and increasingly swollen right hand and arm on October 22, 23, and 24, and repeatedly refused his requests to see a medical provider. Such a staph infection, which would have worsened in appearance with each passing day between October 22 and 24, would constitute a serious medical need to even a layperson like Lieutenant Jones or Deputy Gray. *Jones*, 512 F.3d at 481 (A serious medical need is one that is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."). If all of those facts were found to be true by a jury, it would then call into serious question why Jones and Gray refused Humes's repeated requests to see a nurse or doctor for three days. Based on these facts, a reasonable jury could find Jones and Gray acted

---

[15] Humes testified that he did *not* receive his oral antibiotic medications when he returned to WCDC. *Doc. 43-8 at 29*.

with deliberate indifference in denying Humes's adequate medical care and in delaying his receipt of medical care.[16]

Accordingly, Humes should be allowed to proceed with his individual capacity § 1983 claims against Jones and Gray for inadequate medical care and for the delay in allowing him to receive medical care.

### D. Jones and Humes Are Not Entitled to Qualified Immunity

In their Summary Judgment papers, Defendants argue that Jones and Gray "are, in the least, entitled to qualified immunity" on the individual capacity claims. *Doc. 44* at 10–12. However, both prongs of Defendants' qualified immunity defense rest entirely *on their version of the disputed material facts*, i.e., their allegation that neither Jones nor Gray had any personal involvement or knowledge of Humes's need

---

[16] A jury is free to evaluate a delay in medical care claim, without verifying medical evidence, if the casual link between the delay and the resulting injury would be obvious to even a lay person. *See Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (diabetic inmate did not need to submit medical evidence to establish detrimental effects of delay in treatment where the resulting "serious physical conditions…would have been obvious to a layman, or more particularly, to [Defendant] in his day-to-day capacity as [Plaintiff's] jailer."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (inmate's "extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating…constituted a need for medical attention that would have been obvious to a layperson, making submission of verifying medical evidence unnecessary."). *See also Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. 2006) (indicating that in situations where "even a layperson" would recognize the seriousness of an escalating medical condition, it is up to the jury to decide whether defendant's failure to provide immediate medical attention exacerbated plaintiff's condition); *Moore v. Jackson*, 123 F.3d 1082, 1087 n.3 (8th Cir. 1997) (same).

Here, a reasonable jury could find that the four-day delay in providing any medical care for Humes's staph infection allowed the infection to become much more serious and greatly increased the risk of complications (including sometimes fatal septic shock) and hospitalization. Thus, at the summary judgment stage, Humes was not required to place verifying medical evidence in the record to establish his injuries resulting from the four-day delay in him receiving *any* medical care for his staph infection.

for medical care or the delay in him receiving such medical care.[17] Thus, for the same reason Jones and Gray are not entitled to summary judgment on the merits of Humes's inadequate medical care claims, they are not entitled to qualified immunity.

This denial of qualified immunity is *not* a basis for Defendants to seek an interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 320 (1995) (holding "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); *Welch v. Dempsey*, 51 F.4th 809, 812 (8th Cir. 2022) ("In an interlocutory appeal raising a defense of qualified immunity, this court has jurisdiction to address only an order deciding a purely legal issue of whether the facts *alleged by a plaintiff* show a violation of clearly established law. By contrast, an order deciding which facts a party may, or may not, be able to prove at trial is not a final decision that may be appealed.") (emphasis added).

---

[17] For the "clearly established" prong, Defendants cite "*Jolly v. Knudson*, *Miller v. Potts*, and *Davis v. Gusman*," which are not only inapposite to the facts in this case, but also have no bearing on whether Humes's right to adequate medical care for his visibly red, swollen, and infected arm was clearly established at the time the events took place in October 2017. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (Defendant increased Plaintiff's seizure medication); *Miller v. Potts,* No. 5:11-CV-195-JMM-HDY, 2012 WL 1112224, at *3 (E.D. Ark. Mar. 13, 2012), *report and recommendation adopted*, 2012 WL 1112167 (E.D. Ark. Apr. 3, 2012) (Defendant made a medical appointment for Plaintiff immediately upon learning of his spider bite); *Davis v. Gusman*, No. 11-CV-2731-SS, 2012 WL 3150047, at *2 (E.D. La. Aug. 2, 2012) ("[P]laintiff d[id] not allege that either [Defendant] had any personal involvement whatsoever in the purported delay in receiving of medical attention" for his spider bite).

### E.    Humes's Official Capacity Claims

In addition to directly naming White County, Arkansas as a Defendant, Humes brings official capacity claims against Sheriff Miller, Edwards, Jones, and Gray. As a matter of law, these "official capacity" claims are construed as claims being brought against the Defendants' employer, White County. *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018).

White County cannot be held vicariously liable, in a § 1983 action, for the acts of its employees. *Id*. at 800–01 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). Instead, it can only be held liable if Humes's injuries were caused by: (1) an "official policy"; (2) an unofficial "custom;" or (3) a "deliberately indifferent failure to train or supervise." *Id*. at 801–02; *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699–700 (8th Cir. 2016).

In support of his official capacity claims, Humes makes the following conclusory allegations: (1) "White County through its sheriff failed to see that its staff was properly trained to deal with the medical needs of its pretrial detainees, and such failure to train amounted to deliberate indifference;" and (2) White County, Edwards, and Sheriff Miller had a "policy, custom, and practice of failing and/or refusing to provide proper medical care to its inmates, due to financial concerns," which resulted in a violation of his constitutional rights. *Doc. 1 at 7, 9.*

In their Statement of Undisputed Facts, Defendants explicitly state that Humes has provided no facts or other evidence to support his claim that Jones and Gray were not properly trained or that any of the WCDC's policies, practices, or customs on the delivery of medical care to prisoners were unconstitutional. *Doc. 45, ¶¶ 16, 20.* In Humes's Amended and Substituted Response to Defendants' Statement of Undisputed Facts, *his attorney* attempts to create a genuine issue of disputed material facts with a *one-word* response: "Deny." *Doc. 50, ¶¶ 50, 59.* Apart from violating both Rule 56(c) and (e), this one word response also violates Judge Rudofsky's earlier Order specifically advising counsel that the party opposing the movant's Statement of Undisputed Facts must "state with particularity the portion of the allegation denied" and "cit[e] to any evidentiary support for the denial." *Doc. 33 at 3.*

Accordingly, based on Defendants' properly supported undisputed facts, there is no legal foundation to support Humes's *Monell* liability claim against White County. *See* Local Rule 56.1(c); Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp.,* 477 U.S. at 325 ("the burden on the… party [moving for summary judgment] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

### 1.    Humes's Official Policy Claim

WCDC's Policies and Procedures Manual contains an official policy on providing medical care to prisoners. It provides that a third-party medical provider will conduct sick call for prisoners and provide them with medical care, regardless of their financial status. *Doc. 50, ¶¶ 53–54.* Humes has not provided any facts or made any allegations suggesting the WCDC's policies and procedures governing medical care for prisoners are facially unconstitutional.

In cases where the policy at issue is facially unconstitutional, no evidence is needed to establish a constitutional violation "other than a statement of the municipal policy and its exercise." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)). Where, as here, the official policy is facially constitutional, the analysis is different. When a policy does not "affirmatively sanction" unconstitutional conduct, it is not an unconstitutional policy and cannot be the basis for any constitutional violation. *Szabla*, 486 F.3d at 390–91 (references omitted).

### 2.    Humes's Custom, Practice, Procedure, or Failure to Train Claim

Proving a custom or practice or a failure to train always involves a fact-intensive inquiry into *other similar instances* in order to prove the existence of customs and practices, or the nature, extent, and duration of any alleged failures to

train. *See Mick v. Raines*, 883 F.3d 1075, 1079, 1080 (8th Cir. 2015) (explaining that a plaintiff may prove an unofficial custom by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.") (omitting citation).

As established by Defendants' Undisputed Material Facts, Humes has neither alleged nor shown a "pattern of similar constitutional violations by untrained employees" as required "to demonstrate [a municipality's] deliberate indifference for purposes of failure to train." *Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019). He has not provided *any* facts or other evidence suggesting that other prisoners in the WCDC received delayed or inadequate medical care as a result of unconstitutional customs, practices, or failures to train jail employees. He also has provided *no evidence* of the prevalence or extent of any such unconstitutional activities. Finally, Humes has not identified the specific training failures that allegedly caused him to receive delayed or inadequate medical care, or which specific Defendants should have received that training.

Humes has not come forward with *any* facts or other evidence that might support an official capacity claim against White County whether based on customs, policies, practices, or failure to train. Defendants' Statement of Undisputed Facts, which Humes has failed to properly controvert, establishes there is no factual basis to support any of those "official capacity" claims against any of the Defendants. Accordingly, all of these official capacity claims against Defendants should be dismissed, with prejudice.

    **F.**    **Humes's So-Called "Medical Negligence" Claim**

In his Complaint and Amended Brief in Support of Response to Motion for Summary Judgment, Humes vaguely suggests that he is "seeking damages for medical negligence." *Doc. 1 at 1; Doc. 51 at 1.* His Complaint asks the Court to exercise supplemental jurisdiction over this purported state law claim, despite having never identified *any Defendant* who allegedly committed the "medical negligence." *Doc. 1 at 2.* Finally, Humes does not cite any Arkansas cases or statutes recognizing a cause of action for "medical negligence." Of course, Arkansas statutes and case law do create and recognize a state cause of action for *medical malpractice*; however, such a claim may only be brought against physicians or other medical providers. Ark. Code Ann. §§ 16-114-201 to -213. None of the Defendants in this case are physicians or medical providers. I am unaware of any legal authority recognizing a cause of action in Arkansas for "medical negligence" against

defendants who are *not* medical providers, and who do not owe any of the duties of care that are required to support a medical malpractice claim.

Accordingly, Humes's "medical negligence" claim, which is not asserted against any specific Defendant, fails to state a claim for relief under Arkansas law, and should be dismissed.

## IV.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.   Defendants' Motion for Summary Judgment (*Doc. 43*) be GRANTED, in part, and DENIED, in part.

2.   Summary judgment be GRANTED on Humes's individual capacity claim against Edwards.

3.   Summary judgment be DENIED on Humes's individual capacity deliberate indifference claims against Jones and Gray and these claims PROCEED to a jury trial.

4.   Summary judgment be GRANTED on Humes's official capacity claims against White County, Arkansas, Sheriff Miller, Edwards, Jones, and Gray.

5.   Judgment in favor of White County, Arkansas, Sheriff Miller, and Edwards be entered at the appropriate time.

6.   Humes's state claim for "medical negligence" be DISMISSED, without prejudice.

Dated this 9th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE